## Emily Weaver, Appt., *v.* Martin Reed.

Where one agrees in a pending ejectment suit to pay certain judgments out of the proceeds of the land, the title to the land so recovered will be held by him in trust to pay the judgments.

In the above case, R. agreed to appropriate the proceeds of the land: (1) To the payment of costs, fees, and expenses of recovery; (2) to the payment of a judgment held by himself, and on which he bought the land; and (3) to the payment of judgments held by W. A bill in equity having been filed by W. against R. to enforce this agreement, the master allowed R. credit for a mortgage given by him to his attorney for services in the ejectment suit, and interest on the same, also for $1,200 for other expenses of the ejectment suits, and for $525 for improvements on the land and for the amount of his judgment. He charged R. with the yearly rental of the land since the recovery in the ejectment suits and the amount of W.'s judgments. The court confirmed the master's report and W. took an appeal. *Held,* that there was no error.

(Argued November 7, 1887. Decided January 3, 1888.)

October Term, 1887, No. 242, W. D., before GORDON, Ch. J.,

PAXSON, STERRETT, GREEN, and WILLIAMS, JJ. Appeal from a decree of the Common Pleas No. 2 of Allegheny County, in equity. Affirmed.

Bill in equity, wherein Henry Weaver and Emily Weaver, his wife, in right of his wife, were complainants, and Martin Reed was defendant, with notice to John Barton and A. M. Brown.

The case was referred to Mr. Thomas C. Lazear as master, to state an account, who reported as follows:

All the testimony offered had direct and exclusive relation to the account between the parties, and that account grew out of the agreement of Martin Reed contained in the paper attached to plaintiff's bill of complaint, a copy of which is as follows:

"Pittsburgh, Pa. April 4, 1879.

"I hereby authorize John Barton, my attorney, now conducting an action of ejectment for me against John K. Stewart, No. 412 of October term, 1878, common pleas No. 2 of Allegheny county, that in case of a recovery in said case, to adjust and settle the judgments in favor of Emily Weaver, Nos. 324 and 325 of April term, 1878 (being one of the judgments against said land when sold at sheriff's sale to me), out of the proceeds of said land, said proceeds to be applied, first to payment of costs, fees, and expenses of recovery, then to my judgment on which I sold and purchased the land, then out of the balance the judgment of said Emily Weaver is to be paid.

"Martin Reed.

"Attest: John Barton."

This paper was held by the supreme court in the opinion delivered in said appeal (and to be found in 6 Cent. Rep. 179), to be a valid obligation, supported by a sufficient consideration, binding on Reed and constituting him a trustee for Emily Weaver, of the title to the land therein mentioned, to the extent of the judgments therein recited belonging to her, and which judgments she had previously recovered against Henry Weaver, her husband. This agreement manifestly contemplated a sale of the land in order to carry out its provisions. But no such sale was ever made either by Mr. Barton, who would seem to be

the trustee designated for that purpose, or by Mr. Reed. On the contrary, after the latter had recovered a judgment for the land in the ejectment referred to in said agreement, he entered into possession thereof on or about October 29, 1880, and has continued in possession ever since, treating the property as his own, and wholly ignoring Mrs. Weaver's rights in the premises, until she succeeded in reversing the decree of this court in the aforesaid appeal.

The title to this land was finally decided in favor of Reed on the determination of the second ejectment brought for the same by John K. Stewart against Reed at No. 100, March term, 1881. In the prior ejectment of Reed against Stewart for the land (being the same referred to in said agreement as then pending), Reed also succeeded in recovering a judgment. The final judgment in the second ejectment was recovered on July 23, 1882.

The property, to carry out the provisions of said agreement, should then have been sold or within a reasonable time thereafter; and this might, therefore, have been taken as the proper time at which the accounts between Reed and Mrs. Weaver should be stated; but the counsel for both parties, in the testimony and arguments before the master, preferred to treat the time of hearing as a convenient date for that purpose; and as Reed consented to account for the rental value of the land during the whole period he had possession of the same, Mrs. Weaver has no reason to complain of this mode of adjustment.

The master finds that a fair rental value with which to charge Reed during the six and a half years he has had possession of the farm is $400 per annum, making in all for that period $2,600. Against this, however, he is entitled to set off several items for which he should be allowed in a settlement with Mrs. Weaver. During his occupancy of the farm he made permanent improvements to the same in repairing old fences, erecting new ones, in adding to and repairing some of the buildings on the premises, as well as rendering the soil more productive by the use of fertilizers; and for all these, after deducting the value of some timber he had taken off the place, he should be allowed $500 as a fair estimate of the increased value of the lands in consequence of these betterments.

He also paid taxes amounting in the aggregate to $460, which were a charge on the land, for which he should be allowed.

Another item in dispute, for which he claimed credit as prop-

erly allowable under the said agreement, was for costs and expenses he had incurred in various ways (exclusive of counsel fees) in the litigation he had carried on in respect to said land for the recovery thereof. Without discussing the testimony on this item, the master would merely repeat that, in his judgment, $1,200 is a reasonable allowance for the same.

Mr. Reed also paid interest, amounting in all to $525, on a mortgage he had given to John Barton, Esquire, on the land, to secure his fees for services in conducting the litigation for the recovery thereof, said mortgage being originally for $2,500. This also is a proper item of credit in favor of Reed in his settlement with Mrs. Weaver.

The judgment, also, which Reed held against Henry Weaver, and amounting at the date of the hearing before the master (to which date all the computations in respect to said settlement have been made) to the sum of $1,613.80, he is entitled to be allowed for by the express terms of said agreement.

All the several items above mentioned, including the judgment aforesaid, amount together to $4,308.80. Apply the aforesaid rental value of said farm of $2,600 to the reduction of these items, and a balance of $1,708.80 will still remain due to Reed as between him and Mrs. Weaver, to be paid out of the proceeds of the land before her judgment can be reached in the order of distribution provided for in said agreement.

This balance of $1,708.80 coming to Reed is subject, however, to the payment of the whole, or whatever portion of the costs of this suit, including the master's fee, the court by its final decree in the case may impose on him.

The master, therefore, reports as the result of the whole matter, under the above order of reference, that the defendant, Martin Reed, holds the title to the land in question in trust, to pay out of the proceeds thereof, on the sale thereof, to the several parties entitled thereto by virtue of the aforesaid agreement, in the order and manner following, *viz.:*

1. To the payment of whatever balance may remain to be paid on the aforesaid mortgage of John Barton, Esq., with the interest and costs;

2. To payment of claim of A. M. Brown, Esq., for a bill of $250, which Reed had contracted to pay him for services rendered in the litigation for the recovery of said land, with interest and costs;

3. To the payment of the aforesaid balance of $1,708.80, coming to Reed on settlement between him and Mrs. Weaver, in respect to the items specified in a former part of this report (out of this balance of $1,708.80, however, a sufficient sum to pay whatever amount of costs of this suit the court may impose on him, must first be applied thereto, and then only the remainder thereof is to be paid to Reed) ;

4. The residue of said fund is to be applied next in order to the judgments of Mrs. Weaver, or such amount thereof as may be sufficient to pay the same with interest and costs—subject, however, to payment out of the same, as part of said judgments, of whatever portion of the costs of the suit this court may decree to be paid by her;

5. The surplus, if any, of said proceeds, after payment of all the foregoing items, should go to Martin Reed.

To the master's report, the following exceptions, *inter alia,* were filed:

The master erred: (2) In giving said Martin Reed credit with permanent improvements alleged to have been made on said farm, "in repairing old fences, erecting new ones, in adding to and repairing some of the buildings on the premises, as well as rendering the soil more productive by the use of fertilizers;" (3) in allowing credit to Martin Reed "for cost and expenses he had incurred in various ways (exclusive of counsel fees) in the litigation he has carried on in respect to said land for the recovery thereof," the sum of $1,200; (4) in charging against said land the mortgage of John Barton from Martin Reed of $2,500; (5) in giving credit to Martin Reed in the sum of $525, being the interest paid by Martin Reed on said mortgage to John Barton or the assignee of said mortgage; (6) in not charging Martin Reed with all the costs of these proceedings in equity; (7) in not allowing said Emily Weaver the sum of $1,100 for timber cut off by Martin Reed from said premises during his occupancy thereof, with which amount Martin Reed should be charged;" and (8) in not charging Martin Reed in favor of Emily Weaver with the judgment of Martin Reed v. John K. Stewart, of No. 81, January term, 1881, for $460.

The court dismissed the exceptions and entered a decree in accordance with the recommendations of the master.

The assignments of error specified: (1–7) The action of the court in dismissing the exceptions to the master's report; and

(8, 9) in entering a decree in accordance with the master's rec-
ommendations.

*Robb & Fitzsimmons,* for appellant.—The rule of law re-
specting the liability or responsibility of trustees compels an ac-
curate account in favor of the *cestui que trust* and against the
trustee. This is upon the principle that the trustee has the es-
tate in hand and must act honestly. His accounts should be rea-
sonably perfect and regularly kept, in order that the *cestui que
trust* may be assured upon investigation that his estate has not
been mismanaged and squandered. It is, therefore, the well-
settled rule that where the "trustees kept very imperfect ac-
counts, or none at all, every intendment of fact is to be made
against them." Hart v. Ten Eyck, 2 Johns. Ch. 81–108; *Ex
parte* Cassel, 3 Watts, 408.

A trustee who, having assumed and taken upon himself the
management of an estate, and instead of managing and preserv-
ing the estate for the common benefit of those who might be en-
titled to it, trumped up an unfounded claim in his own favor
against it, by which he attempted to appropriate the whole of
it, will not be allowed a claim for his trouble, loss of time, and
expenses, as it is inconsistent with every principle of retributive
justice that a trustee who betrays the confidence reposed in him
and attempts to defraud the *cestui que trust* by appropriating
the trust funds to the discharge of a pretended claim of his own
should receive the same reward that is due to virtue only, given
as a remuneration for services rendered with a view to advance
the interests of the *cestui que trust. Re* Swartswalter, 4
Watts, 77.

The duty of a trustee or of an agent in charge of property to
keep regular and correct accounts is imperative; if he does not,
every presumption of fact is against him. He cannot impose
upon his principal or *cestui que trust* the obligation to prove that
he has actually received what he might have received, and what
it was his duty to endeavor to obtain. By failing to keep and
submit accounts he assumes the burden of repelling the pre-
sumption and disproving negligence and faithlessness. Landis
v. Scott, 32 Pa. 495; Berryhill's Appeal, 35 Pa. 245.

A trustee cannot claim compensation for services self-im-
posed, and resulting from his own wrong. Stearly's Appeal, 38
Pa. 525.

A trustee or agent cannot generally, as intimated, unite in himself the opposite character of buyer and seller; and if he does so, the *cestui que trust* or principal, unless upon the fullest knowledge of all the facts he elects to confirm the act of the trustee or agent, may repudiate it, or he may charge the profits made by the trustee or agent with an implied trust for his benefit. Parker v. Nickerson, 112 Mass. 195; Bigelow, Fr. 238.

The officers and directors of a corporate body, for example, are trustees of the stockholders, and cannot, without being guilty of fraud, secure to themselves advantages not common to the latter. Thus, where a corporation instructs its officers to effect a loan of money, and they, in violation of their duty, proceeded to secure personal claims of their own against the company, they were held guilty of a fraudulent breach of trust, and the transaction was declared void as against the stockholders. Simons v. Vulcan Oil & Min. Co. 61 Pa. 202, 100 Am. Dec. 628; Koehler v. Black River Falls Iron Co. 2 Black, 715, 17 L. ed. 339; Charitable Corp. v. Sutton, 2 Atk. 404; Jackson v. Ludeling, 21 Wall. 616, 22 L. ed. 492; York & N. M. R. Co. v. Hudson, 19 Eng. L. & Eq. Rep. 361; Ang. & A. Priv. Corp. § 312.

Improvements put by a guardian upon lands fraudulently purchased from the ward are not to be reimbursed; and if put on by him as guardian, without an order of the court, it is at his own risk. Eberts v. Eberts, 55 Pa. 110.

*C. S. Fetterman* for appellee.

PER CURIAM:

Under the decision of this court, the statement of an account between the contestant parties was all that remained to be done. The matter was properly referred to a master, who heard the proofs of the parties and stated an account.

We have examined the report of the master, and agree with the court below: That there is nothing in it which requires correction.

The appeal is dismissed and the decree affirmed, at the costs of the appellant.